J-S19032-24
J-S19033-24
J-S19034-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSEPH JOHN LESCHINSKIE, JR. | : | |
| | : | |
| Appellant | : | No. 1537 MDA 2022 |

Appeal from the Judgment of Sentence Entered July 26, 2022
In the Court of Common Pleas of Northumberland County Criminal
Division at No(s):  CP-49-CR-0000116-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSEPH JOHN LESCHINSKIE, JR. | : | |
| | : | |
| Appellant | : | No. 1750 MDA 2022 |

Appeal from the Judgment of Sentence Entered July 26, 2022
In the Court of Common Pleas of Northumberland County Criminal
Division at No(s):  CP-49-CR-0000116-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JOSEPH JOHN LESCHINSKIE, JR. | : | No. 1057 MDA 2023 |

Appeal from the Order Entered July 5, 2023

J-S19032-24
J-S19033-24
J-S19034-24

In the Court of Common Pleas of Northumberland County Criminal
Division at No(s): CP-49-CR-0000116-2021

BEFORE: DUBOW, J., BECK, J., and COLINS, J.*

MEMORANDUM BY COLINS, J.:               **FILED: DECEMBER 23, 2024**

These appeals were filed after a jury before the Court of Common Pleas of Northumberland County found Defendant, Joseph John Leschinskie, Jr., guilty of terroristic threats.[1]  In duplicate appeals, filed at different stages during the torturous post-trial procedural history of this case, Defendant asks us to find that his *pro se* post-sentence motion did not offend considerations of hybrid representation and his in-trial requests for a mistrial based on references to his status as a convicted felon should have been granted.  In its appeal, the Commonwealth challenges the post-sentence grant of a mistrial based on the trial references to Defendant's convicted felon status and asserts that its prosecution will be terminated or substantially handicapped if it would be forced to retry its case against Defendant.

Following a Shamokin city council meeting on September 14, 2020, Defendant approached city councilwoman Jennifer Seidel across a table from her and continued a disagreement between them that was discussed during the meeting.  N.T. 5/17/22, 50, 83.  He told her to swear on her life and the lives of her children that she did not know something that he had been talking

---

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2706(a)(1).

about in the meeting. *Id.* at 50. When she did as much, he muttered, "I hope your kids die." *Id.* at 51. He next told her that she did not deserve her seat on the city council and maintained that she only won the support of a particular ward because of him. *Id.* at 51, 83. She contested his point about her election, and, in response, he called her "a cunt." *Id.* at 51, 83, 168. At that moment, Defendant hit the table in front of him and reached over it to put "a finger in her face." *Id.* at 51, 83. Councilwoman Seidel's husband, Erik, then moved in between Defendant and his wife. *Id.* at 52-53, 83.

Defendant said to Mr. Seidel, "You know she doesn't deserve that seat. That bitch should give that seat up." N.T. 5/17/22, 53, 84. Mr. Seidel asked, "Why," and Defendant responded, "Because that's my seat." *Id.* at 53, 85. Mr. Seidel told him, "You can't even hold a seat, you're a convicted felon." **Id.** at 53. Defendant responded, "I am going to punch you right in your fucking face." *Id.* at 58, 86, 96. Defendant pulled his right arm back and a local police chief restrained him. *Id.* at 58, 96-97. As the police chief pulled him away and outside, Defendant repeatedly yelled, "Let me back at 'em," and said, "If he wants to fight me, I'll fight 'em here." *Id.* at 58, 60, 86, 97, 138. While the Seidels were still inside, Ms. Seidel's mother, who was in the outside parking lot, heard Defendant yell, "Bring 'em out. Come on out, Erik, I'll bury

you. Come on, Erik. Bring them both out. I'll bury them both."[2] *Id.* at 105. He also screamed, "He wants the felon. I will give him the felon." *Id.* at 106. Afterwards, the Seidels were escorted out of the building to their car. *Id.* at 62. At that time, Defendant followed the direction of the Seidels, pacing across the street, while yelling, "There are those mother fuckers. You are going to be picking your teeth off the ground. You are going to pay. I am going to make you pay. I am going to kill you. I am going to fucking kill both of you." *Id.* at 62, 65, 89. Defendant also repeated that he was going to punch Mr. Seidel in his "fucking face" and, upon leaving the scene in his car, yelled to Mr. Seidel, "I'll see you in a dark alley." *Id.* at 65-66, 89-90, 100, 120, 175-77.

The Commonwealth charged Defendant with two counts of terroristic threats and six counts of disorderly conduct with respect to his actions following the city council meeting. Criminal Complaint, 9/24/20, 1-4; Bill of Information, 2/11/21, 1. He proceeded to a one-day jury trial on May 17, 2022. The Commonwealth presented seven witnesses: the Seidels; Ms. Seidel's mother who went to the city council meeting after she had been

_____

[2] After Ms. Seidel's mother heard him make the "bury them both" remark, she retrieved her cellular phone from her car and recorded a four-minute video before going inside the meeting venue to check on her daughter. N.T. 5/17/22, 106, 114-15, 124-25. Segments of that video were played at Defendant's trial. *Id.* at 116-17. Defendant was heard on the video saying, among other things: (1) "I'll catch him in a dark fucking alley when he's up there crying;" (2) "I'll knock him the fuck out;" (3) "I will destroy the mother fucker;" and (4) "She would have been picking her fucking teeth out." *Id.* at 117-18.

watching an online video feed of the meeting (Jacquelin Klemick); an off-duty police officer who escorted the Seidels to their car (Officer James Filco); the police chief who escorted Defendant out of the meeting room (Chief Darwin Tobias); a chief county detective who investigated the incident at the meeting for the District Attorney's Office (Degg Stark); and a city administrator who was present for the meeting and escorted the Seidels to their car (Robert Slaby). Defendant testified and presented two additional witnesses who had been present at the meeting: the city solicitor (Vincent Rovito) and a public audience member (Jamie Yerkes).

Mr. Rovito denied that Defendant "use[d] a derogatory term like cunt" or made any comment to Ms. Seidel "about killing her children." N.T. 5/17/22, 193. He also denied that Defendant had attempted to throw a punch. *Id.* at 194, 202. He testified that Defendant said to Mr. Seidel, during their exchange, "Oh, dude, you better back up or I'm gonna hit you." *Id.* at 199-201. He asserted that Defendant willingly left the meeting room with the police chief but agreed that Defendant was yelling, "Let me at 'em," at that time. *Id.* at 200-01.

Ms. Yerkes denied that she heard Defendant threaten to kill anyone. N.T. 5/17/22, 204. She went outside as the police chief "was pushing [Defendant] out" and agreed that she attempted to strike Defendant, by trying to "smack" him, as she was going out the door. *Id.* at 205-07. On cross-examination, she referred to Mr. Seidel calling Defendant "a felon" as the

- 5 -

cause of the "commotion" at the meeting. *Id.* at 216. Ms. Yerkes acknowledged that she responded, "Rooting for you," in response to a Facebook post that Defendant made about his trial. *Id.* at 229-30.

Defendant denied that he called Ms. Seidel "a cunt." N.T. 5/17/22, 248 ("That word is not in my vocabulary. No. I absolutely did not."). He also denied that he called her "a bitch." *Id.* at 248 ("I have respect for women. I wouldn't do that."). He recalled that he asked Ms. Seidel to "swear on her children" as to her truthfulness on a matter but denied that he said that he wanted her children to die. *Id.* at 247-48, 266-67. He recalled that Mr. Seidel "approached [him] from behind and made a vulgar and derogatory comment" to him, but denied that he attempted to strike Mr. Seidel. *Id.* at 248-49. He admitted that he told Mr. Seidel, "I would punch him in his fucking face," in response to Mr. Seidel's remark. *Id.* at 249-50, 263. He denied that the police chief had restrained him or grabbed his arm before he left. *Id.* at 251. He agreed that, after he was escorted outside, he was still upset and could have been yelling things, but he denied that he followed anyone down the street. *Id.* at 254. He denied that he said anything to the Seidels when they came outside. *Id.* at 255. He agreed, consistent with the cellphone video that had been played earlier at the trial, that he said something about "a dark alley and knocking [Mr. Seidel] out." *Id.* at 255-56. He denied that he threatened to kill or assault the Seidels or that he made any statements with the intent to terrorize them. *Id.* at 257.

On cross-examination, Defendant suggested that his statement, "I will punch you in your fucking face," was permitted free speech. N.T. 5/17/22, 258 ("I think some things can be altered [*sic*] as First Amendment Free Speech without intent."). He denied that he told Ms. Seidel, "I hope your kids die." *Id.* at 271. As for his statement, "She'd be picking up her fucking teeth," Defendant claimed that statement was made in reference to Ms. Yerkes, and not Ms. Seidel, after Ms. Yerkes had attempted to strike him, implying that his wife would do something. *Id.* at 271-72 ("I was referencing that about my wife to Jaime. There was no -- that was not to any of the Seidels. My wife is -- I have seen her before. She is a fairly tough girl..."). He also denied that he said, "I'll fuckin' kill both of you," and "I'll see you in a dark alley." *Id.* at 272-73.

As it is relevant to the parties' claims on appeal, we note that there were three instances in the trial testimony where witnesses referenced Defendant's status as a prior convicted felon. In the first instance, Ms. Seidel quoted on direct examination her husband's statement to Defendant, "You can't even hold a seat [on the city council], you're a convicted a felon." N.T. 5/17/22, 53. Defendant's counsel made a mistrial request, suggesting that the prosecutor had "brought it out deliberately." *Id.* at 53. The prosecutor denied that it was elicited deliberately and suggested that the court could offer a curative instruction. *Id.* at 54. The court noted that Defendant did not file a motion *in limine* "about the issue." *Id.* Defense counsel responded that the

prosecution did not file a motion concerning prior bad acts. *Id.* at 54-55. The court denied the mistrial request and opted to give the following instruction to the jury:

> Member of the jury, you have heard reference to the fact that there was testimony that to the effect that Mr. Leschinskie was a felon. That is not in any way to be held against the defendant. You have taken -- that is not in any way to be held against him. You have taken an oath that you will decide this case based strictly on the evidence presented here. The defendant is presumed to be innocent of the charges filed against him in this matter. You cannot in any way hold the statement against the defendant that he is a felon, against him in any way. It is not determinative of anything in this trial as it relates to guilt or innocence. The issue here is whether or not the defendant committed these acts, any of these acts on September 14th. It is not an issue of what he may have done before, or what his criminal record is, if any. That's not relevant. You are to base -- you are to base your case, your findings strictly on the evidence presented in this, and the fact that somebody said to him that Mr. -- and counsel said you are going to hear other people, you may hear other people in the other case say that he is, the defendant is a felon, is not in any way to be held against him at all.

N.T. 5/17/22, 56-57.

In the second instance, Ms. Seidel's mother testified on direct examination that she saw Defendant outside the city council meeting screaming, "He wants the felon. I will give him the felon." N.T. 5/17/22, 106. Defendant's counsel again moved for a mistrial and asserted that the "felon stuff" should not be in front of the jury and that a cautionary instruction would be insufficient. *Id.* at 107. The prosecutor confirmed that she instructed her witnesses "not to mention the felony thing." *Id.* The court decided to deny

the mistrial request and instead opted to offer another cautionary instruction. *Id.* The court mentioned the fact that the reference in question concerned a statement made by Defendant and noted again that Defendant did not file a motion *in limine*. *Id.* at 107-08. The court offered the following instruction to the jury:

> Members of the jury, again, you are to disregard the testimony regarding the word, "Felon." I have already instructed you and I, again, instruct you that that is to play no role in your consideration of this matter. It is irrelevant for today's purposes. The only issue is -- the only issues today are whether the defendant committed one or more of the acts that he is alleged to have committed. The issue of a felon is to play no role in your consideration whatsoever. If any of you believe you cannot honor that, you need to communicate that to us over the lunch break. Thank you.

N.T. 5/17/22, 108.

In the last instance, Jamie Yerkes referenced, on cross-examination, that she heard the commotion in the city council meeting because Mr. Seidel called Defendant "a felon." N.T. 5/17/22, 216. In response, the judge removed the jurors from the room. *Id.* In the ensuing sidebar, Ms. Yerkes asserted that she did not hear anyone caution her not to mention that Defendant was a felon in her testimony and defense counsel maintained that he did as much. *Id.* at 217. As follows, the court sustained an objection to the testimony, apparently speaking to the witness in that regard, and offered another instruction to the jury:

> Ma'am, the defense counsel has objected and the court has ruled that the issue of whether or not [defense counsel] [*sic*] is a felon

is not to be raised in this proceeding. So, please do not make any further reference to that.

The jury is instructed to disregard that testimony. The issue here is whether or not [defense counsel] -- I'm sorry -- Mr. Leschinskie committed any of the acts as alleged in the charging instruction, in the Information. You may continue…

N.T. 5/17/22, 218.

At the end of the one-day trial, the jury found Defendant guilty of one count of terroristic threats, with respect to Mr. Seidel, and acquitted him of another terroristic threats charge, with respect to Ms. Seidel, and three counts of disorderly conduct. N.T. 5/17/22, 315; Verdict Sheet, 5/17/22, 1. The court also acquitted him of three summary offense counts of disorderly conduct. N.T. 5/17/22, 316; Judgment Form, 5/17/22, 1. Sentencing was deferred for the preparation of a pre-sentence investigation report. N.T. 5/17/22, 317.

On June 6, 2022, defense counsel filed a motion seeking a continuance of the sentencing hearing then scheduled for July 26, 2022, because counsel expected that Defendant would be filing an appeal and counsel would be away at that time on a prepaid vacation. Application for Continuance, 6/6/22, § II. The court denied the request and, at the scheduled hearing, sentenced Appellant to six to twenty-three months' imprisonment, to be followed by three years' probation. Sentencing Order, 7/26/22, 1; N.T. 7/26/22, 19. Immediately after the sentence was imposed, Defendant brought to the court's attention that his private attorney was leaving for the next six weeks

and thus would be unavailable during the period for filing either a post-sentence motion or an appeal. N.T. 7/26/22, 20. He offered to fill out an *in pauperis* form for the possible appointment of counsel due to his existing counsel's unavailability. *Id.* at 20-21. The court declined to act on the request for the appointment of new counsel because his counsel of record had made no formal request to withdraw from representation. *Id.* at 21 ("THE COURT: It's premature for me to address that at this point, sir. I don't have anything in front of me. You have counsel of record and I haven't seen any application for in forma pauperis or anything else.").

On the next day, defense counsel filed a motion to withdraw as counsel which notified the court that he would be "out of state and unavailable for any [h]earing for the next five (5) weeks as he [would be] on a prepaid vacation out of state." Motion to Withdraw as Counsel, 7/29/22, ¶ 6. On August 2, 2022, Appellant filed a Praecipe to Proceed in Forma Pauperis, which the court granted on the same date. Though the ten-day deadline for any post-sentence motion to be filed for Defendant would have expired on August 5, 2022, the court scheduled a hearing for counsel's motion to withdraw on September 7, 2022. Order, 8/2/22, 1. With counsel still of record, Defendant filed a *pro se* post-sentence motion on August 3, 2022. In the motion, Appellant claimed, *inter alia*, that the trial court erred by denying his requests for a mistrial in connection with the trial references to him as a felon. *Pro Se* Post-Sentence Motion, 8/3/22, ¶¶ 2-3. Appellant also filed a *pro se* notice of appeal on

August 24, 2022.[3] On September 7, 2022, the court convened the hearing on the pending motion to withdraw as counsel and granted it. Order, 9/7/22, 1; N.T. 9/7/22, 2. Appellant thereafter filed a counseled motion for the appointment of new counsel. Motion to Appoint Counsel, 9/13/22, 1.

On September 14, 2022, the trial court ordered the parties to file briefs with respect to Defendant's *pro se* post-sentence motion. Order, 9/14/22, 1. On September 22, 2022, Defendant filed *pro se* motions seeking the disqualification of the trial judge from the case and the appointment of new counsel. He also filed his *pro se* brief on his post-sentence motion on September 26, 2022. The Commonwealth filed its response to the post-sentence motion on October 14, 2022.

On October 25, 2022, the trial court convened a hearing on the judicial disqualification and counsel appointment motions. The court admitted that it was unaware of Defendant's *pro se* post-sentence motion until after its issuance of a Rule 1925(b) order on August 31, 2022. N.T. 10/25/22, 5. It ordered the appointment of new counsel and deferred argument on the disqualification motion to another date. Order, 10/25/22, 1.

---

[3] This notice initiated Defendant's appeal at 1537 MDA 2022. The trial court issued an order pursuant to Pa.R.A.P. 1925(b) with respect to that appeal and then vacated the order when the court subsequently became aware of Defendant's *pro se* post-sentence motion. Order, 9/7/22, 1. Despite the vacation of the Rule 1925(b) order, Defendant filed a *pro se* Rule 1925(b) statement on September 21, 2022.

On December 19, 2022, newly appointed defense counsel filed an amended post-sentence motion, adopting the claims from Defendant's *pro se* post-sentence motion, and a *nunc pro tunc* motion for reconsideration of sentence. Amended Post-Sentence Motion, 12/19/22, ¶ 9. On December 22, 2022, Defendant filed a counseled notice of appeal, referencing the sentencing order from July 26, 2022, and supposed orders from December 1 and December 8, 2022.[4] Notice of Appeal, 12/22/22, 1. The December orders are *dehors* the certified record for these appeals and not referenced as filed in the trial court's docket.

Despite the filing of the second defense appeal, the trial court simultaneously scheduled a hearing on the *nunc pro tunc* post-sentence motion for reconsideration of sentence and ordered the filing of a Rule 1925(b) statement.[5] Order, 1/3/23, 1; Order, 1/4/23, 1. On February 14, 2023, the trial court reinstated Defendant's post-sentence motion rights *nunc pro tunc* and Defendant filed a new counseled post-sentence motion, which included, *inter alia*, his claim that he should have been granted a mistrial based on the trial references to him as a felon. Order, 2/14/23, 1; Post-Sentence Motion, 2/14/23, ¶¶ 6(b), 16-20. The parties subsequently filed responsive briefs ordered by the trial court. Assuming that the February 14, 2023 post-sentence motion would be denied by operation of law as of June 14, 2023,

---

[4] This notice initiated Defendant's appeal at 1750 MDA 2022.

[5] Defendant filed a counseled Rule 1925(b) statement on January 23, 2023.

Defendant filed a counseled motion seeking a thirty-day extension of the consideration period of the post-sentence motion on June 6, 2023. The trial court granted that motion on the next day.

On July 5, 2023, the trial court issued an order and opinion granting relief on Defendant's post-sentence motion. The court rejected challenges to the sufficiency of the evidence and the discretionary aspects of the imposed sentence, but agreed with the remaining claim that a mistrial should have been granted with respect to the trial references to Defendant being a felon. As for the felon references, the court noted, "[T]he cumulative prejudicial effect, the nature of the remarks, and the fact that the remarks were exploited by the Commonwealth in all three instances, albeit not maliciously, is too much for three curative instructions to address." Opinion, 7/5/23, 6 (unpaginated).

On July 1, 2023, the Commonwealth filed a notice of appeal from the July 5, 2023 order. In a certification attached to the notice, the Commonwealth asserted that it was appealing pursuant to both Pa.R.A.P. 311(d) and Pa.R.A.P. 311(a)(6).[6] Certification, 7/1/23, 1. We hereby *sua sponte* consolidate these three appeals as the issues presented in them arise from the same convoluted procedural history and essentially ask us to resolve

_____

[6] The Commonwealth also timely filed a court-ordered Rule 1925(b) statement on August 9, 2023.

- 14 -

identical issues concerning the post-trial resolution of Defendant's requests for a mistrial. *See generally* Pa.R.A.P. 513.

Defendant presents the following questions for our review:

[I]. Does this Court have jurisdiction o[ver] the present appeal(s)?

[II]. If this Court determines that it does have jurisdiction over the merit of the appeal(s)[,] should a mistrial be granted?

Defendant's Brief for Appellant, 3 (suggested answers omitted).

The Commonwealth presents the following questions for our review:

I. Whether an error of law occurred when the trial court granted a post-sentence motion for a mistrial when curative instructions to the jury were sufficient to protect the Defendant from any prejudicial effect of references to his convicted felon status, which was relevant to the Commonwealth's case?

II. Whether the Commonwealth's case will be terminated or substantially handicapped where three defense requests for a mistrial were denied during trial, yet a mistrial was granted more than one year later following a post-sentence motion, and the Commonwealth would be forced to re-try the case after the passage of time?

III. Whether the Commonwealth's case will be terminated or substantially handicapped if forced to re-try the case where reference to the Appellee's convicted felon status cannot be extricated without prejudicing the Commonwealth's case and presentation to a jury[?]

Commonwealth's Brief for Appellant, 2-3 (unnecessary capitalization and proposed answers omitted).[7]

Before we may consider the merits of the parties' substantive claims concerning the appropriateness of a mistrial grant, we must resolve which of the appeals are properly before us. Defendant is appealing the order imposing his judgment of sentence on July 26, 2022, and the Commonwealth is appealing the entry of the order granting a mistrial trial on July 5, 2023. Both these orders cannot be appealed at the same time.

Generally, after an appeal is taken the trial court may no longer proceed further in the matter. Pa.R.A.P. 1701(a). If the *pro se* post-sentence motion was a nullity because it was a form of improper hybrid representation, and the *pro se* defense notice of appeal, filed on August 24, 2022, or the counseled defense notice of appeal, filed on December 22, 2022, divested the trial court of jurisdiction, then the subsequent order granting a mistrial must also be nullity. **See Bell v. Kater**, 839 A.2d 356, 357-58 (Pa. Super. 2003) (quashing appeal *nunc pro tunc* where the trial court court granted a petition reinstating the appellant's appellate rights *nunc pro tunc* while the appellant's first,

_____

[7] For the sake of clarity we will refer to the Commonwealth's brief at 1057 MDA 2023 as the "Commonwealth's Brief for Appellant" and refer to its responsive briefs at 1537 MDA 2022 and 1750 MDA 2022 as the "Commonwealth's Brief for Appellee." In turn, we will refer to Defendant's briefs at 1537 MDA 2022 and 1750 MDA 2022 as the "Defendant's Brief for Appellant" and refer to his responsive briefs at 1057 MDA 2023 as the "Defendant's Brief for Appellee." Because Defendant's briefs at 1537 MDA 2022 and 1750 MDA 2022 are identical, we will only refer to them as a singular brief.

untimely appeal was pending before this Court). At the same time, if the trial court did not timely rule on the post-sentence motion in this case, then the resulting order granting a mistrial could have been rendered a legal nullity if it was issued at a time in which the trial court lacked jurisdiction. **See Commonwealth v. Martinez**, 141 A.3d 485, 490 (Pa. Super. 2016) (stating, "a trial court retains jurisdiction to rule on a post-sentence motion only for the duration of the disposition period as set forth in [Rule] 720(B)(3)") (original quotation marks and citation omitted); **see also Commonwealth v. Bentley**, 831 A.2d 668, 669 (Pa. Super. 2003) (recognizing that "jurisdiction goes to a court's fundamental authority to entertain claims," and finding that the trial court lacked authority to issue an order deciding the defendant's post-trial motion beyond the timeframe allowed under Rule 720); Pa.R.Crim.P. 720 at Official Comment – Disposition (stating the trial court retains jurisdiction over a timely, written post-sentence motion for the duration of the disposition period, that is to say for 120 days unless a 30-day extension is granted). We must first cut the Gordian knot produced by the extended post-trial procedural history in this case.

Defendant asks us to conclude that there was an administrative breakdown caused by the trial court's failure to appoint new counsel at the time of sentencing due to his then counsel's impending scheduled vacation that resulted in the abandonment of his representation. Defendant's Brief for Appellant, 10-11. Due to that breakdown, he argues that his *pro se* post-

sentence motion – which was filed within ten days of his sentencing hearing – should have been considered by the trial court even though he still had counsel of record. *Id.* at 11. He also asserts that the trial court's subsequent reinstatement of his post-sentence motion rights was properly entered out of "necessity as it was the [t]rial [c]ourt that deprived him of meaningful review" by not ensuring that he had the assistance of counsel during the initial ten-day post-sentence motion period. *Id.* at 12. While staying silent as to the propriety of his notices of appeal and the notices' effect on the trial court's jurisdiction to eventually grant the post-sentence mistrial, he suggests that this Court lacks jurisdiction for his appeals from the original judgment of sentence. *Id.* at 12. The implication of his argument is that only the order granting him a mistrial is properly before this Court.

The Commonwealth argues that the only appeal properly before this Court is the appeal at 1537 MDA 2022 which was initiated by Defendant's *pro se* notice of appeal. Commonwealth's Brief for Appellee, 13. It reasons that the *pro se* post-sentence motion was a legal nullity because it was filed in violation of our prohibition on hybrid representation but the same considerations that should have blocked the filing of the post-sentence motion did not prevent Defendant from filing his *pro se* notice of appeal. *Id.* at 12-13. The Commonwealth also argues that Defendant's counseled post-sentence motion was a nullity because it was filed more than thirty days after sentencing and the trial court did not have jurisdiction to permit him to file a

*nunc pro tunc* post-sentence motion at that time. *Id.* at 14. As a result of the improper grant of leave for the filing of a post-sentence motion *nunc pro tunc* and the filing of the original *pro se* notice of appeal, the Commonwealth asserts that the trial court was divested of jurisdiction at the time that it granted a mistrial so the order granting that relief was a nullity. *Id.* It also reasons that the appeal at 1057 MDA 2023, initiated by the counseled notice of appeal, is improperly before this Court because it was filed after the appeal resulting from Defendant's *pro se* notice of appeal was already pending. *Id.* at 14.

At the time Defendant filed his *pro se* post-sentence motion he still had counsel of record. In this circumstance, the motion would normally be considered a legal nullity due to our prohibition on hybrid representation. *See Commonwealth v. Ruiz*, 131 A.3d 54, 56 n.4 (Pa. Super. 2007) (*pro se* post-sentence motion, filed by represented defendant, was held to be legal nullity with no legal effect), *citing Commonwealth v. Ellis*, 626 A.2d 1137, 1139 (Pa. 1993) ("there is no constitutional right to hybrid representation either at trial or on appeal"). In *Commonwealth v. Leatherby*, 116 A.3d 73, 78-79 (Pa. Super. 2015), however, this Court held that where counsel has effectively discontinued working on a defendant's behalf, this Court will conclude that a *pro se* filing does not offend consideration of hybrid representation. *Id.* (holding that Leatherby's *pro se* post-sentence motion, that was filed while he had counsel, tolled his time to file an appeal where he was effectively

abandoned by his counsel at the time that the motion was filed). *Leatherby* is applicable in the instant case.

Here, the trial court proceeded with sentencing, knowing from a prior motion for a continuance that Defendant's counsel would be unavailable to assist him during the time periods for filing a post-sentence motion or an appeal, if a post-sentence motion was not filed. Application for Continuance, 6/6/22, § II. After the imposition of the sentence, the court was again reminded about counsel's upcoming unavailability due to a previously scheduled vacation. N.T. 7/26/22, 20. The court took no action to ensure the continuation of Defendant's representation at that time in the absence of a withdrawal request from counsel, but, after a withdrawal request was filed on the next day, the court scheduled a hearing on it beyond the deadlines for filing a post-sentence motion or an appeal. Order, 8/2/22, 1. The court's failure to take prompt action to ensure that Defendant was not effectively abandoned by his counsel in these circumstances constituted a breakdown that necessitated Defendant's filing of his *pro se* post-sentence motion to preserve at least some of his claims for an appeal. Where Defendant was effectively unrepresented during the time at which he filed his post-sentence motion, his *pro se* motion did not offend the considerations of hybrid representation and thus was valid.

The existence of counsel of record also had no bearing on the validity of Defendant's *pro se* notice of appeal because "our courts are required to docket

a *pro se* notice of appeal from a counseled defendant, as the acceptance of this filing protects the defendant's constitutional right to appeal." ***Commonwealth v. Bradley***, --- A.3d ----, 2024 WL 4631683, *2 (Pa. Super., filed Oct. 31, 2024), ***citing Commonwealth v. Williams***, 151 A.3d 621, 624 (Pa. Super. 2016). In situations where defendants have filed notices of appeal after the entry of their judgment of sentence, but prior to the trial court's disposition of their pending post-sentence motions, we have treated the appeals resulting from the notices of appeal as premature. ***See Commonwealth v. Cooper***, 27 A.3d 994, 1007 (Pa. 2011); ***Commonwealth v. Enix***, 192 A.3d 78, 79 n.1 (Pa. Super. 2018). Here, the appeal at 1537 MDA 2022 was later perfected upon the trial court's consideration and ruling on the *pro se* post-sentence motion. ***See*** Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof."); ***cf. Cooper***, 27 A.3d at 1008 (holding that a "snap" appeal filed by a *pro se* defendant, prior to his counsel's filing of a post-sentence motion, should have been treated as a premature appeal as if it had been filed after the denial of the post-sentence motion in accordance with Pa.R.A.P. 905(a)(5)).

Thus, the *pro se* post-sentence motion was valid under ***Leatherby*** and the subsequent *pro se* appeal should have been treated as premature under ***Cooper***. We next turn to the timing and manner of the ruling on the post-

sentence motion. Pursuant to Pa.R.Crim.P. 720(B)(3)(a), the trial court was required to decide the post-sentence motion within 120 days, with that deadline falling in this situation on December 1, 2022. Alternatively, pursuant to Pa.Crim.P. 720(B)(3)(a), the court could have granted a 30-day extension for deciding the post-sentence motion upon an extension request motion filed by Defendant within the 120-day disposition period. A 30-day extension would permit consideration of the post-sentence motion until January 2, 2023, given that the 30-day extension would have elapsed on a weekend prior to a legal holiday. Pa.R.Crim.P. 101(c) (incorporating by reference the rules of construction in the Pennsylvania Rules of Judicial Administration including Pa.R.J.A. 107(a)-(b), relating to computation of time for the rule of construction relating to the exclusion of the first day and inclusion of the last date of a time period and the omission of the last day of a time period which falls on Saturday, Sunday, or a legal holiday).

The trial court issued no decision on the post-sentence motion and defendant did not seek an extension of the ruling period as of December 1, 2022. Newly appointed counsel filed an amended post-sentence motion on December 19, 2022, but that motion was untimely and filed beyond the 120-day deadline for a ruling on the original *pro se* motion. **See** Pa.R.Crim.P. 720(B)(1)(b) ("The defendant may file a supplemental post-sentence motion in the judge's discretion as long as the decision on the supplemental motion can be made in compliance with the time limits of paragraph (B)(3)."). The

- 22 -

trial court had no power to *sua sponte* grant an extension of the time period for consideration of the existing *pro se* post-sentence motion or this untimely counseled motion. **See** Pa.R.Crim.P. 720 at Official Comment – Disposition ("Only the defendant or counsel may request such an [Pa.R.Crim.P. 720(B)(3)(b)] extension. The judge may not, *sua sponte*, extend the time for decision: a congested court calendar or other judicial delay does not constitute 'good cause' under this rule.").

Based on this procedural history, the *pro se* post-sentence motion should have been denied by operation of law on December 1, 2022, pursuant to Pa.R.Crim.P. 720(B)(3)(b), and an order indicating as much should have been issued by the clerk of courts on that date pursuant to Pa.R.Crim.P. 720(B)(3)(c). At the moment that the *pro se* post-sentence motion was denied by operation of law, the premature appeal at 1537 MDA 2022 should have been treated as filed on the same day pursuant to Pa.R.A.P. 905(a)(5). All the subsequent actions of the trial court that related to the post-sentence motion were taken in an absence of jurisdiction, contrary to Pa.R.A.P. 1701(a)'s mandate to "no longer proceed further in the matter."

As a result of the divestment of the trial court's jurisdiction due to the perfection of the premature appeal, the trial court's subsequent orders to reinstate the post-sentence motion rights on February 14, 2023, and grant a mistrial on July 5, 2023, must be considered legal nullities. **See Bell**, 839 A.2d at 358 (holding that the trial court's order granting the appellant leave

to appeal *nunc pro tunc* was legal nullity because it was entered "at a time when the trial court did not have jurisdiction, *i.e.*, the order was entered after [the appellant] filed her first notice of appeal with this Court"). We must thus vacate, at a minimum, the July 5, 2023 order granting relief on the post-sentence motion. Accordingly, the only appeal that is properly before us is the appeal at 1537 MDA 2022. Given this conclusion, we quash Defendant's duplicative appeal at 1750 MDA 2022, that was initiated by his counseled notice of appeal. We also dismiss the appeal at 1057 MDA 2023 because the July 5, 2023 order was void *ab initio*.

Turning to Defendant's issues in the appeal at 1537 MDA 2022, we are first presented with a challenge to our jurisdiction to review an appeal from the order imposing the judgment of sentence. Defendant's Brief for Appellant, 10-12. We have resolved this issue through the close analysis of all the filings ands rulings in the lower court post-sentence. This is the only appeal properly before us.

In his second issue, Defendant argues that his in-trial requests for a mistrial should have been granted because the multiple references to him as a convicted felon caused unfair prejudice. Defendant's Brief for Appellant, 13-17. He acknowledges that the trial court issued "at least two curative instructions," and notes that, while the instructions were "good intentioned," they "did no more than confirm [his] criminal past to the jury." **Id.** at 13. He argues that the references to his criminal past were "significantly prejudicial

information that never should have been put before" the jury and the "cumulative effect of all of the references" resulted in a trial that was "[c]onstitutionally infirm." *Id.* at 13-14.

In its brief, the Commonwealth addresses the first two trial references to Defendant's convicted felon status (Ms. Seidel's quoting of her husband telling Defendant, "You can't even hold a seat, you're a convicted felon," and Ms. Seidel's mother's quote of Defendant yelling, "He wants the felon. I will give him the felon") and argues that the testimony in those circumstances was admissible. Commonwealth's Brief for Appellee, 15-19. The Commonwealth asserts that the references to Defendant's convicted felon status were admissible under the motive and *res gestae* exceptions to Pa.R.E. 404(b)(1)'s bar on the admission of prior bad acts evidence. Commonwealth's Brief for Appellee, 17-18. It maintains that the trial court properly denied the mistrial requests because, *inter alia*, the trial court instructed the jury to ignore the references and "neither reference amounted to having the unavoidable impact of denying [Defendant] a fair trial." *Id.* at 18-19.

Upon considering challenges to the admissibility of evidence, we apply an abuse of discretion standard. *Commonwealth v. Gonzalez*, 112 A.3d 1232, 1236 (Pa. Super. 2015). We also apply an abuse of discretion standard to a trial court's decision to deny a motion for a mistrial. *Commonwealth v. Wright*, 961 A.2d 119, 142 (Pa. 2008). "An abuse of discretion may not be found merely because an appellate court might have reached a different

conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." *Commonwealth v. Dillon*, 925 A.2d 131, 136 (Pa. 2007), *citing Grady v. Frito-Lay, Inc.*, 839 A.2d 1038, 1046 (Pa. 2003).

We note that "[a] mistrial is an extreme remedy only warranted when the prejudice to the movant cannot be ameliorated to ensure a fair trial." *Commonwealth v. Goods*, 265 A.3d 662, 665 (Pa. Super. 2021), *quoting Commonwealth v. Risoldi*, 238 A.3d 434, 458 (Pa. Super. 2020). "Our courts have recognized that a trial court may grant a mistrial only 'where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict.'" *Commonwealth v. Wilson*, 273 A.3d 13, 20-21 (Pa. Super. 2022), *quoting Wright*, 961 A.2d at 142.

"When dealing with a motion for mistrial due to a reference to past criminal behavior, the nature of the reference and whether the remark was intentionally elicited by the Commonwealth are considerations relevant to the determination of whether a mistrial is required." *Commonwealth v. Kerrigan*, 920 A.2d 190, 199 (Pa. Super. 2007), *quoting Commonwealth v. Guilford*, 861 A.2d 365, 370 (Pa. Super. 2004).

Generally, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular

- 26 -

occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). "Evidence of separate or unrelated 'crimes, wrongs, or acts,' however, has long been deemed inadmissible as character evidence against a criminal defendant in this Commonwealth as a matter not of relevance, but of policy, *i.e.*, because of a fear that such evidence is so powerful that the jury might misuse the evidence and convict based solely upon criminal propensity." *Dillon*, 925 A.2d at 137.

The initial threshold for the admissibility of evidence is relevance. *Commonwealth v. Green*, 271 A.3d 393, 401 (Pa. Super. 2021). Pursuant to Pa.R.E. 401, evidence is relevant if "(a) it has the tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." *Commonwealth v. Drumheller*, 808 A.2d 893, 904 (Pa. 2002). "All relevant evidence is admissible, except as otherwise provided in law. Evidence that is not relevant is not admissible." Pa.R.E. 402. "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Pennsylvania Rule of Evidence 404(b) provides as follows:

**(b) Crimes, Wrongs or Other Acts**

> *(1) Prohibited Uses.* Evidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> *(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)-(2). The listed exceptions at Rule 404(b)(2) are not exhaustive and the Courts of this Commonwealth have recognized a *res gestae* exception to Rule 404(b) which allows the admission of other crimes evidence when relevant to furnish the context or complete story of the events surrounding a crime. **Dillon**, 925 A.2d at 137, **citing Commonwealth v. Williams**, 896 A.2d 523, 539 (Pa. 2006), and **Commonwealth v. Paddy**, 800 A.2d 294, 307-08 (Pa. 2002). "[E]vidence of prior crimes is not admissible for the sole purposes of demonstrating a criminal defendant's propensity to commit crimes." **Commonwealth v. Melendez-Rodriguez**, 856 A.2d 1278, 1283 (Pa. Super. 2004) (*en banc*). Nevertheless, "[e]vidence may be admissible in certain circumstances[,] where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character." **Id.** Specifically, other crimes evidence is admissible if offered for a non-propensity purpose, such as proof of an actor's knowledge, plan, motive, identity, or absence of mistake or accident. **Commonwealth v.**

*Chmiel*, 889 A.2d 501, 534 (Pa. 2005). When offered for a legitimate purpose, evidence of prior crimes is admissible if its probative value outweighs its potential for unfair prejudice. *Commonwealth v. Hairston*, 84 A.3d 657, 664-65 (Pa. 2014).

Unfair prejudice "means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." *Dillon*, 925 A.2d at 141, *citing* Pa.R.E. 403, Comment.

> Evidence will not be prohibited merely because it is harmful to the defendant. This Court has stated that it is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the evidence and offenses for which the defendant is charged. Moreover, we have upheld the admission of other crimes evidence, when relevant, even where the details of the other crime were extremely grotesque or highly prejudicial.

*Dillon*, 925 A.2d at 141 (citations and quotation marks omitted).

Defendant asserts – without any reference to Rule 404(b) – that other crimes evidence is generally inadmissible and refers to a case that preexisted the adoption of Rule 404, *Commonwealth v. Maute*, 485 A.2d 1138 (Pa. 1984), in addition to a pre-May 1, 2019 unpublished memorandum of this Court that may not be cited pursuant to Pa.R.A.P. 126(b)(1), to suggest that reversible error occurred because there was more than "an isolated passing reference to [his] prior criminal activity." Defendant's Brief for Appellant, 13-

14. This limited discussion fails to properly review the admissibility of the references to his prior convicted felon status under our controlling law.

With respect to the terroristic threats charge that Defendant was convicted of, the material fact to be determined by the jury was whether Defendant had in fact threatened to punch Mr. Seidel in the face. In the context of the trial testimony, Ms. Seidel and Ms. Yerkes's references to Defendant being a "felon" were in reference to Mr. Seidel's statement to Defendant that immediately preceded the threat. The proper quoting of Mr. Seidel was relevant to whether Defendant made the threat because the reference was obviously insulting and explained why Defendant would lose control in the situation and resort to threatening physical violence at the city council meeting. Ms. Seidel's mother's quoting of Defendant yelling, "He wants the felon. I will give him the felon," was also relevant because it made it more likely that Defendant made the initial threat to Mr. Seidel because Defendant referenced his own status as a prior felon to continue to pose a threat to Mr. Seidel.

Thus, in context, the references to Defendant's prior criminal conduct were admissible for the legitimate purposes of proving Defendant's motive for threatening Mr. Seidel and whether he in fact had threatened Mr. Seidel.[8] In

_____

[8] We note that, pursuant to Pa.R.E. 404(b)(3), "the prosecutor must provide reasonable written notice in advance of trial so that the defendant has a fair opportunity to meet it, or during trial if the court excuses pretrial notice on
*(Footnote Continued Next Page)*

each instance, Defendant would have been entitled to a jury instruction that the evidence was admissible only for a limited purpose. ***Commonwealth v. Hutchinson***, 811 A.2d 556, 561 (Pa. 2002). The trial court gave limiting instructions each time that Defendant's criminal felon status was referenced at trial and the court made clear to the jury that the felon status was "not in any way to be held against the defendant," N.T. 5/17/22, 56-57, that it "was to play no role in [the jury's] consideration of this matter," ***id.*** at 108, and that the issue of whether Defendant was a felon was "not to be raised" at trial, ***id.*** at 218. While there were legitimate but limited grounds for the jury's consideration of the felon status references, the instructions granted were actually beneficial to Defendant in that they essentially asked the jury to give no consideration to the references which could have been accepted as proof of motive and otherwise for *res gestae* purposes.

As the references were relevant and admissible with the inclusion of limiting instructions, the only remaining question for us is whether the references caused unfair prejudice to Defendant. Here, while the jury was generally made aware that Defendant was a "felon," it was never given any information concerning the nature of any prior convictions that Defendant had

_____

good cause shown, of the specific nature, permitted use, and reasoning for the use of any [other crimes, wrongs, or acts] evidence the prosecutor intends to introduce at trial." No written notice of that nature appears to have been provided to the defense by the Commonwealth in this case, however, Appellant presents no claim in this appeal concerning noncompliance with Rule 404(b)(3).

or any criminal acts that he formerly committed. Our Supreme Court has previously held that where an appellant's "specific [past] crime" was "never mentioned," any prejudice suffered by passing reference to his criminal activity was "slight." **Commonwealth v. Ragan**, 645 A.2d 811, 820 (Pa. 1994). Because the nature of Defendant's conviction was not provided to the jury and the court repeatedly instructed the jury to ignore the references in their deliberations, any "slight" harm that may have been caused was cured.[9] **See Commonwealth v. Tedford**, 960 A.2d 1, 37 (Pa. 2008) (recognizing that when evidence of a defendant's other crimes is admitted for a relevant purpose under Rule 404(b), the defendant is entitled upon request to a limited instruction, which the law presumes the jury will follow); **Commonwealth v. Boczkowski**, 846 A.2d 75, 89 (Pa. 2004) (limiting instructions weighed in favor of upholding decision to admit evidence of other criminal activity). On that basis, we cannot conclude that unfair prejudice occurred at trial.

Moreover, we note the record does not support the notion that the remarks were intentionally elicited by the Commonwealth. When Ms. Seidel

---

[9] We note that the central issue at trial was whether Defendant had engaged in threatening behavior. A reference to a prior conviction for a violent crime would have obviously caused more prejudice than a general reference to Defendant being a "felon." Additionally, Mr. Seidel's comment which included the reference to Defendant being a felon only alluded to the fact that Defendant's status as a felon made him ineligible for election to the Shamokin city council. N.T. 5/17/22, 53. As a crime eliminating a person from public office eligibility could include any number of crimes which have no relation to violent acts or threatening conduct, the vague reference to Defendant's prior criminal record did not suggest that Defendant had a propensity to threaten others.

referenced the status, the Commonwealth was asking her about what Defendant had been saying to her husband rather than asking about her husband's statement to Defendant. N.T. 5/17/22, 53. Ms. Seidel's mother's quote of Defendant referring to himself as a felon was offered in response to the prosecution's general question about what defendant was "doing" and "how [he] was behaving" after he was outside the city council meeting. *Id.* at 106. Ms. Yerkes testified that she heard Mr. Seidel call Defendant a felon in response to a question asking her whether she heard what Defendant had said to the Seidels. *Id.* at 216. In each of the relevant sections of testimony, the prosecutor's questions sought only to elicit testimony about the threatening statements made by Defendant. It was the witnesses' answers beyond the scope of the questions that referred to Defendant's prior felon status. This reinforces our conclusion that a grant of a mistrial would have been an extreme remedy in these circumstances.

While we are aware that the trial court agreed to relief on Defendant's claim subsequent to the divestment of its jurisdiction, we note that the court's opinion offers – like Defendant's Brief for Appellant – scant review concerning the admissibility of the references at issue and relies in part only on our decision in *Maute* that predates the adoption of Rule 404. Properly reviewing the record, we do not agree that Defendant met his burden of proving that the trial court abused its discretion by not granting a mistrial based on the three references to his status as a felon. The evidence was relevant and

admissible for limited purposes. The admission of the evidence was accompanied by instructions to the jury that – instead of referencing the proper limited uses of evidence – told the jury to plainly ignore the references altogether in their deliberations. Lastly, the vague references to Defendant as a "felon" were not unduly prejudicial where no context for Defendant's prior criminal record were provided to the jury, the jury is presumed to follow the trial court's instructions to not include consideration of the references in their deliberations, and the prosecution did not intentionally elicit the testimony. Accordingly, we find that a mistrial was not warranted in this case.

Judgment of sentence affirmed. July 5, 2023 order granting a mistrial vacated. Appeal at 1750 MDA 2022 quashed as duplicative. Appeal at 1057 MDA 2023 quashed as moot.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/23/2024